## MILLS v. DENVER & R. G. R. CO.

(District Court, D. Colorado. June 26, 1912.)

No. 5,925.

1. ADVERSE POSSESSION (§ 7*)—RAILROADS—PUBLIC LAND—EFFECT OF ABANDONMENT.

Where a railroad company, which by the construction of its road has acquired a right of way over public land, has abandoned the same by a relocation of its line and the removal of its track, the old right of way becomes subject to the rules governing property privately owned, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

title thereto may be acquired by another by adverse possession under color of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 24–42; Dec. Dig. § 7.*]

2. ADVERSE POSSESSION (§ 70*)—RAILROADS—RIGHT OF WAY OVER PUBLIC LANDS—EFFECT OF CHANGE OF LINE.

The predecessor of defendant railroad company by building its road in 1877 acquired a right of way over public lands which were afterward patented to complainant's grantors; there being no reservation of the right of way in the patents. In 1899 the railroad company changed its line, purchasing a new right of way from the owners over the lands and removing its track from the old right of way which was then inclosed and thereafter cultivated by the owners with the rest of the land. Held, that the abandonment of the old right of way must be assumed to have been a part of the consideration to the owners of the land for the new one, and that such owners had color of title to such old right of way which after the lapse of the statutory period gave them absolute title by prescription.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394–414; Dec. Dig. § 70.*]

3. RECORDS (§ 9*)—SUIT TO REGISTER TITLE—PERSONS CONCLUDED—SERVICE BY PUBLICATION.

Under the Torrens Act (Laws Colo. 1903, p. 311), providing for the adjudication and registration of land titles, a railroad company which by the construction of its road acquired a right of way over a tract of public land under act of Congress, but afterward by a relocation of its line abandoned such right of way, which was inclosed and cultivated by the owner of the land, where there was nothing of record or on the ground to show its ownership, was properly brought into a suit brought by a purchaser of the land for registration of his title by publication as an unknown party and is bound by the judgment therein.

[Ed. Note.—For other cases, see Records, Dec. Dig. § 9.*]

In Equity. Suit by Ogden Mills against the Denver & Rio Grande Railroad Company. On motion for preliminary injunction. Motion granted.

Bartels & Silverstein and John H. Chiles, all of Denver, for complainant.

E. N. Clark and R. G. Lucas, both of Denver, for defendant.

LEWIS, District Judge. This is an application for a temporary writ of injunction. The facts are these:

Complainant is the owner of 320 acres of land in Huerfano county, holding registered title thereto under the so-called Torrens Act (Laws Colo. 1903, p. 311). The title was confirmed and registered in accordance with the provisions of said act on August 27, 1911. These lands were first entered about 1882, and patents conveying the title from the United States, without any reservation, were issued in 1890. In 1877 the Denver & Rio Grande Railway Company constructed its narrow gauge road across the lands, taking for that purpose a strip thereon 200 feet wide and about 1 mile long. Its right of way thus taken was acquired by virtue of Congressional Act June 8, 1872, c. 353, 17 Stat. 339, and the amendment thereto of March 3, 1877, c. 126, 19 Stat. 405. The section of the right of way across the lands

was a part of the main line of said railroad between La Veta and Alamosa. It thus appears that the title acquired by the entrymen under their patents to the lands was subject to said right of way. The railroad was continuously operated as first constructed by said railway company and its successor, the Denver & Rio Grande Railroad Company, until November, 1899. Just prior to the last-named date, said railroad company had changed its line from narrow to broad gauge, and for that purpose had selected a new route for about 30 miles of its line between La Veta and Alamosa, and had purchased a strip of ground 100 feet wide across complainant's lands from his predecessor in title, and since said last date has continuously operated its road over said subsequently selected route. A rough outline showing the two routes across the lands follows:

Since 1899 the old right of way has been inclosed as a part of the lands, and for many years past has been cultivated, and is now in cultivation. There is not, and has not been for many years, anything to indicate the line across said fields of the original right of way. Soon after the new line was constructed, it was fenced on both sides across these lands, and the grade on the old right of way was plowed down, irrigation ditches were carried across it in places, and it became a common part of the cultivated fields. It was in this condition when complainant purchased the lands, and had been so for many years. There was nothing to indicate, to one going upon the lands, that a railroad had ever existed along the old route, and complainant had no knowledge that it had ever existed when he purchased. After the broad gauge road was constructed and had been in operation for several years, the defendant, a consolidated

corporation under the laws of the states of Colorado and Utah, succeeded to all of the rights and title held by said railroad company to the broad gauge line and also to all interest, if any it then had, in the old right of way on which the narrow gauge line had been constructed. A coal mine has been opened up at a point on the old narrow gauge right of way about six miles westerly from complainant's lands, and shortly before the bill was filed the defendant sent its servants into complainant's fields for the purpose of surveying and staking out the old narrow gauge line with a view to laying down a railroad switch track across the same along said old route from a point of connection with its main line just easterly of complainant's lands and extending thence along said old narrow gauge line to said coal mine for the purpose of hauling out to its main line for shipment the output of said mine.

And thereupon the complainant, a resident and citizen of the state of New York, filed his bill for the purpose of enjoining the defendant from the commission of its threatened acts as an alleged trespass.

On the filing of the bill a restraining order issued, and the defendant in its return to the order to show cause claims the right to take possession of the old right of way as owner thereof.

[1] 1. The defendant takes the position that under the rule announced in Railway Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, and Railway Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639, the title which it claims, as under the act of Congress, to the old right of way, could not, nolens volens, be acquired from it. We do not believe the rule there announced has any application to the facts here. It was certainly not intended by the act to compel the railway company to operate its road over the originally selected route and prohibit thereafter a change in any part of such route, if conditions in the judgment of the company should thereafter render such change advisable. Such change would not likely be made in a rugged, mountainous country, such as we have in hand, until it was first ascertained that the change would promote the safe and economical operation of the road; and, after such a change had been made, the old grade under those conditions could have no semblance to the facts presented in those cases. The reason for the rule there announced does not exist here. One route for the line of its road was all that Congress intended to give it, or it expected to use. Furthermore, it is not now proposed by the defendant to retake, reconstruct, and operate its through line over the old route, but to take and use a part of the old route merely for the purpose of placing thereon and operating a coal mine switch. It is not its purpose to re-establish its through line on the old route. There being then, after the acquisition of the new line, no restriction in the congressional grant on the disposition of the old right of way, it became subject to the rules of property privately owned. It substituted the new route for the old. It took deeds from complainant's grantors to the new route for that purpose. The situation as it then existed between the parties dealing with the subject cannot be considered without reaching the conclusion that the abandonment of the old route by the railway company was

a part of the consideration for the giving of the new route by the owners of the land. Pope v. Devereux, 5 Gray (Mass.) 409; Smith v. Lee, 14 Gray (Mass.) 473; Washburn on Easements & Servitudes (4th Ed.) p. 707 et seq.; Hickox v. Railway Co., 94 Mich. 237, 53 N. W. 1105; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; Investment Co. v. Railroad Co., 108 Mo. 50, 17 S. W. 1000; Trust Co. v. City, 76 Fed. 315, 22 C. C. A. 334.

[2, 3] 2. Aside from the effect of the selection of the new route in the place of the old by the railroad company, coupled with the dealings between the parties in making the change, the defendant cannot now claim the old route, for two reasons: (1) The patents to the lands made no exception of the old right of way. They gave color of title to that strip. Complainant and his grantors have had actual possession of the strip, claiming it under color of title, in good faith, for more than seven years, and have during all of that time paid all taxes legally assessed. Complainant has thereby become vested with the title to said strip by virtue of compliance with the requirements of section 4089, Rev. Stat. Colo. 1908. Leffingwell v. Warren, 2 Black, 599, 17 L. Ed. 261; U. S. v. Power Co., 209 U. S. 447-450, 28 Sup. Ct. 579, 52 L. Ed. 881. (2) If title was not thus passed out of the railroad company, then by registration under the Torrens Act—the original files in which proceeding and decree entered therein have been examined—an indefeasible title to said strip across complainant's lands is now vested in complainant.

The constitutionality of the Torrens Act has been sustained by the Supreme Court of the state. People v. Crissman, 41 Colo. 450, 92 Pac. 949. As to this, however, the defendant, in addition to its insistence that the estate which the railway company took under the grant to the strip in question could in no manner be rendered defeasible, further contends that the registration decree does not bind it, because it was not personally summoned in that proceeding, being brought in, if at all, by publication. The title of the railway company to the old right of way does not appear by public record in the counties through which it passed. There is no record in Huerfano county disclosing any such claim of right over complainant's lands. The instrument by which the railroad was conveyed to defendant from its predecessor, contained for description, as a part of the property conveyed, this:

"With a right of way and grade from a point near La Veta in Huerfano county via the originally constructed line of the Denver & Rio Grande Railroad Company to Veta Pass on the common boundary line of Huerfano and Costilla counties."

And this instrument was of record in said county when the registration proceedings were had. Mortgages given by the defendant and its predecessors were also of record, in which are found similar attempted descriptions of the old right of way. But none of these disclosed in themselves that complainant's lands were touched by said right of way and grade. When complainant purchased, his grantors had been for many years, and at that time were, in the exclusive possession of the part of the old right of way cross-

ing his lands, and had been continuously and were then cultivating the same; and this was the condition at the time the registration proceedings were initiated and carried through. So that there was nothing of record, or upon the ground, to advise the petitioner or examiner of titles, required by the act, that the defendant claimed any interest therein. Under this situation the Torrens Act (section 19) authorized the bringing in of the defendant by publication as an unknown party. The defendant is therefore bound. Baart v. Martin, 99 Minn. 197, 108 N. W. 945, 116 Am. St. Rep. 394; Tyler v. Judges, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 82.

The complainant is entitled to the writ. On filing bond with surety in the sum of $5,000, to be approved by the clerk, it will issue.